# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* NIEMASZ, Minors.

UNPUBLISHED
February 16, 2017

No. 333639
Wayne Circuit Court
Family Division
LC No. 16-521722-NA

Before: GLEICHER, P.J., and MURRAY and FORT HOOD, JJ.

PER CURIAM.

The circuit court terminated respondent-father's parental rights to his three children based on evidence that he forcibly sexually assaulted his daughter's 12-year-old friend. Respondent contends that he poses no danger to his children and maintains his innocence, urging reunification with his children. We discern no error in the circuit court's judgment, and affirm.

## I. BACKGROUND

Respondent and his ex-wife have three daughters—14-year-old MJN, 13-year-old MRN, and 7-year-old KAN. Following their parents' divorce, the children spent every other weekend with their father. On one such weekend in the fall of 2015, MJN and MRN asked their father if they could sleep at the homes of friends. Respondent allowed MJN to go to her friend's, but suggested that MRN's friend, 12-year-old S, come to his house instead. Respondent knew S well as he coached MRN's and S's soccer team.

S arrived before MJN left for the evening. MJN noticed that respondent was behaving oddly. He was "giggly and nudging [S]" and allowed S to have an energy drink while denying his daughters' requests.

Later that night, MRN awoke to the sound of S "screaming." MRN went to respondent's bedroom and found the door ajar. Inside, MRN observed respondent "[l]aying down . . . on top of [S]." S's "pants were pulled down" and respondent was not wearing bottoms. MRN heard S tell respondent to "stop." MRN described, "My dad raped my friend." Frightened, MRN returned to her bed. It should be noted that KAN was also home but did not wake up or witness these events. During a criminal investigation into respondent's conduct, MRN told a detective that she had dreamed these events. At the combined adjudication trial/termination hearing, MRN claimed she made this statement because she did not want her father "to get in trouble."

-1-

MRN described that the following morning, S was "[n]ot talkative . . . she was . . . quiet." When MJN returned home, she noticed that both MRN and S were uncharacteristically quiet and that respondent was "kind of following [S] around."

Not long after this incident, respondent's ex-wife took the children to Kalahari (a hotel and indoor waterpark). S's family also made the trip. MJN, suspicious that something had happened on the night of the sleepover, approached S and convinced her to speak up. MJN then reported S's story to her mother. MJN explained that she was suspicious because her father had previously confessed sexual activity with an underage girl. On the eve of her parents' divorce, respondent took the then 10-year-old MJN into the garage where "He told me that he had, like, this sickness, this sex disorder" that made it "hard to . . . control when he has urges." MJN asserted that respondent admitted to having sex with his children's 13-year-old babysitter.

Roseville police detective Jeremy Scicluna questioned respondent on two separate occasions. Scicluna described that at the first meeting he presented "two themes" to respondent: "the theme of a pedophile versus the theme of a person who messed up." Respondent denied being a pedophile but did not respond to the other situation. Respondent admitted to having a "sex problem" that had led to the demise of his marriage and other relationships. Respondent offered no denial when asked, "Could it cause you to blur lines with age." Instead, respondent "admitted that his sex problem caused him to not look at the [sic] aspect of it," i.e. "the age of a girl."

Scicluna interviewed respondent again after his arrest. Respondent had been charged with one count of first-degree criminal sexual conduct.[1] By that time, word of the allegations had reached the media. Respondent "assured" the detective "there were no other victims from the soccer team." Scicluna confronted respondent, "You and I both know that you had sex that day . . . . Sex did happen that night. I believe that it was two people who had blurred the lines, do you know what I'm saying," and respondent answered, "Right." Scicluna testified that he then told respondent, "[W]e can all mess up in this world," and respondent stated, "Yeah, but this was a major mess up. I'm not going to see my children again."

The children's Department of Health and Human Services (DHHS) caseworker, Kady Morgan, also took the stand. Morgan described that at their first meeting, MJN "was very upset, crying, just overall a complete mess." As time wore on, MJN's "overall emotional well-being" went "downhill." MJN had run away from home, was suicidal, and "state[d] she does not want to live in a world with people like her dad." MRN was angry in the beginning. After meeting her father at a prior court hearing, MRN showed great anxiety. She would no longer shower or sleep alone. MJN and MRN were both receiving intensive counseling services.

The DHHS sought termination of respondent's parental rights at the initial disposition. After hearing the evidence, the court adjudicated respondent unfit. The court then found clear and convincing evidence to support termination pursuant to MCL 712A.19b(3)(g) and (j). Respondent appeals.

---

[1] Respondent was convicted by a jury on January 26, 2017.

## II. STATUTORY FACTORS

Respondent challenges the evidentiary support for the statutory grounds underlying the termination decision. Pursuant to MCL 712A.19b(3), a circuit court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence" that at least one statutory ground has been proven. The petitioner bears the burden of proving that ground. MCR 3.977(A)(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). If the court seeks termination at the initial disposition, as in this case, legally admissible evidence must underlie the termination decision. MCR 3.977(E)(2), (3). We review a circuit court's factual finding that a statutory termination ground has been established for clear error. *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). "Clear error signifies a decision that strikes us as more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

A circuit court may terminate parental rights under MCL 712A.19b(3)(g) if it finds, by clear and convincing evidence: "The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." Respondent contends that termination was not supportable on this ground because he had more than adequately provided proper care and custody for his children for many years, and did so alone during parenting time following his divorce.

Regardless of respondent's parenting skills at other times, he did not provide proper care and custody when he chose to sexually assault one of his children's preteen friends while two of his children were in the house. Respondent's actions caused MJN and MRN extreme emotional trauma, requiring intensive therapeutic services. MJN has attempted suicide and MRN expresses continuing fear of her father. And the evidence supports that respondent will be unable to provide proper care and custody within a reasonable time. Respondent admitted to Detective Scicluna that he has a sexual disorder that causes him to ignore the age of his intended target. Respondent has yet to begin psychological or psychiatric treatment to attempt to overcome this disorder and there is no evidence that he will ever be able to safely parent his children. Accordingly, termination under factor (g) was appropriate.

Termination was also supportable under MCL 712A.19b(3)(j), which provides that a parent's rights may be terminated if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." MJN and MRN have already been harmed by their father's conduct. They both require intensive counseling to overcome the trauma caused by respondent's sexual assault of their friend. MRN's anxiety was heightened after encountering her father in the courthouse, supporting that visitation would cause additional harm. KAN is still too young to understand what her father did, but that will not remain true for long. Accordingly, KAN also faces a significant risk of emotional harm if contact is permitted between father and child. We therefore discern no error in this regard.

## III. BEST INTERESTS

Respondent further contends that termination of his parental rights was not in the best interests of his children. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *Moss*, 301 Mich App at 90. The lower court should weigh all the evidence available to it in determining the child's best interests. *Trejo*, 462 Mich at 356-357. Relevant factors in this consideration include "the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality. . . ." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, [and] the children's well-being while in care. . . ." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). "With respect to the trial court's best-interests determination, we place our focus on the child rather than the parent." *In re Schadler*, ___ Mich App ___; ___ NW2d ___ (Docket No. 327977, issued May 24, 2016); slip op at 2, citing *Moss*, 301 Mich App at 87.

MJN, MRN, and KAN now live fulltime with their mother and stepfather. There have been no allegations of parental neglect or abuse in that home. Initially, respondent was permitted to contact his children via telephone, email, and social media. However, even these arms-length communications proved emotionally detrimental to the children and were discontinued. We do not doubt that respondent loves his children, but that is an insufficient basis for a healthy parent-child relationship.

Respondent has been convicted of forcibly sexually assaulting a 12-year-old child. Respondent's actions were a breach of trust; he was the victim's soccer coach and the father of the victim's friend. Respondent has a history of similar conduct and will require years of treatment to ensure he is no longer a danger to young girls. Moreover, although respondent has yet to be sentenced, he will be imprisoned for a significant period of time for his crime. Under these circumstances, respondent will be unable to provide his children with a permanent and stable home for the remainder of their minority. Given the nature of respondent's offense, the effect his conduct has had on his children, and the length of time he will be absent from his children's lives, the circuit court correctly determined that termination of his parental rights was in his children's best interests.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Christopher M. Murray
/s/ Karen M. Fort Hood

-4-